United States Court of Appeals,

Fifth Circuit.

No. 90-2833.

Lynwood MOREAU, Individually, as President of the Harris County
Deputy Sheriff's Union, Local 154, IUPA, AFL-CIO, and as FLSA
Representative of 37 Similarly Situated consenting Harris County
Law Enforcement Officers, et al., Plaintiffs-Appellants,

v.

Johnny KLEVENHAGEN, et al., Defendants-Appellees.

March 31, 1992.

Appeal from the United States District Court For the Southern
District of Texas.

Before WILLIAMS, WIENER, Circuit Judges, and LITTLE, District Judge
*.

WIENER, Circuit Judge:

A deputy sheriffs' union appeals the district court's grant of
summary judgment in favor of Harris County, Texas on all three of
the union's claims under the Fair Labor Standards Act (FLSA).  We
affirm the grant of summary judgment on two of those claims.  But
finding that the union was misled by the district court's
bifurcation of the case and was thereby prevented from presenting
adequate summary judgment proof on the third claim, we reverse and
remand to the district court for further proceedings with respect
to that claim.


I.

---

* District Judge of the Western District of Louisiana,
sitting by designation.

FACTS

On April 15, 1988, Eugene T. Merritt, Jr. brought suit individually and as President of the Harris County Deputy Sheriffs Union [1] (the Union), together with approximately 400 other Harris County Deputy Sheriffs, against Harris County and Sheriff Johnny Klevenhagen (collectively, the "County"). The complaint alleged that the County violated the FLSA by (1) failing to pay cash in lieu of compensatory time for overtime work in the absence of an agreement with the plaintiffs' designated representative (the comp time claim); (2) failing to include longevity pay in the plaintiffs' "regular rate of pay" for overtime payment calculations (the longevity claim); and (3) excluding non-mandated firearms qualification time from the calculation of number of hours worked (the firearms qualification claim). The district court denied the Union's motion for partial summary judgment and granted summary judgment in favor of the County on all three claims.

II.

ANALYSIS

A. *The Comp Time Claim.*

Under the Harris County pay system, deputy sheriffs receive

---

[1] At the time of appeal, Lynwood Moreau served as president of the Union.

compensatory time as overtime compensation at 1-1/2 times the normal pay rate. When a deputy's bank of comp time reaches 240 hours, the deputy receives compensation in cash for overtime at the hourly rate, based on the deputy's "base pay rate." Each of the deputies in this action designated the Union as his or her representative. The County instituted its pay system without an agreement with the Union.

The Union's claim alleges that the County's pay system violates Section 7(*o* ) of FLSA, which provides in part:

> (2) A public agency may provide compensatory time under paragraph (1) only—
>
> (A) Pursuant to—
>
>> (i) applicable provisions of a collective bargaining agreement, memorandum of understanding or any other agreement between the public agency and representatives of such employees; or
>>
>> (ii) in the case of such employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of work....
>
> * * * * * *
>
> (B)
>
> * * * * * *
>
> In the case of employees described in clause (A)(ii) hired prior to April 15, 1986, the regular practice in effect on April 15, 1986, with respect to compensatory time off for such employees in lieu of the receipt of overtime compensation, shall constitute an agreement or understanding under such clause (A)(ii).[2]

The County's current pay system was the "regular practice in

---

[2] 29 U.S.C. § 207(*o* ).

effect" on April 15, 1986. Each deputy signed a payroll compensation form that stated that the deputy understood and accepted the County's personnel regulations, which set forth the terms of the pay system.

The Union asserts that as the deputies in this case have designated the Union as their representative, under Section 207(*o*)(2)(A)(i) the County has no authority to pay deputies for overtime in comp time, even if the deputies elect to be paid in comp time, unless the County has entered into an agreement with the Union to that effect. The Union relies on the Tenth Circuit's decision in *International Ass'n of Fire Fighters, Local 2203 v. West Adams County Fire Protection Dist.*[3] In that case, the Tenth Circuit analyzed the Department of Labor regulations interpreting Section 207(*o* ) and held that (1) if employees have a representative, an employer may pay comp time in lieu of cash only pursuant to an agreement between the employer and the representative, and (2) employees are deemed to have a representative by merely designating a representative, whether or not the employer recognizes the representative. The Union argues that under *West Adams,* as the deputies had designated the Union as their representative, the County could not pay comp time in the absence of an agreement with the Union.

We find the Union's argument unpersuasive. TEX.REV.CIV.STAT.ANN. art. 5154c prohibits any political subdivision

---

[3]877 F.2d 814 (10th Cir.1989).

from entering into a collective bargaining agreement with a labor organization unless the political subdivision has adopted the Fire and Police Employee Relations Act. Harris County has not adopted that Act; thus, under article 5154c the County has no authority to bargain with the Union. In light of that Texas statute, it is not *West Adams* but two other circuit court decisions, one from the Fourth Circuit [4] and another from the Eleventh Circuit,[5] that are instructional in the disposition of this case.

In *Abbott v. City of Virginia Beach,*[6] the Fourth Circuit held that neither FLSA nor the regulations implementing it showed any intent to preempt state laws prohibiting cities from entering into collective bargaining agreements.[7] As Virginia law had such a prohibition, and as the pay system in Virginia Beach gave individual police officers an absolute choice of receiving either comp time or cash for overtime work, the Fourth Circuit held that the pay system, which was not the result of an agreement between the city and the officers' designated representative, did not violate FLSA.[8]

---

[4]*Abbott v. City of Virginia Beach*, 879 F.2d 132 (4th Cir.1989), *cert. denied,* 493 U.S. 1051, 110 S.Ct. 854, 107 L.Ed.2d 848 (1990).

[5]*Dillard v. Harris,* 885 F.2d 1549 (11th Cir.1989), *cert. denied,* --- U.S. ----, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990).

[6]Note 4, *supra.*

[7]*Id.* at 136.

[8]*Id.* at 137.

In *Dillard v. Harris*,[9] the Eleventh Circuit agreed with the analysis in *Abbott* and went on to discuss an alternative approach that led to the same result.  In *Dillard*, as in *Abbott* and the instant case, (1) the employees had designated a representative, (2) state law prohibited the city from entering into a collective bargaining agreement, and (3) the city, without an agreement with the employees' representative, had established a pay system providing for comp time.  The city employees argued that, as they had designated a representative, the city could not pay them in comp time in the absence of an agreement with their representative. The *Dillard* court held that under the plain language of Section 207(*o* )(2)(A), the prerequisite for coverage under subclause (i) was the existence of an *agreement* between the city and the representative, rather than the existence of the *representative*.[10] Thus, held the court, even though the employees had designated a representative, subclause (ii) rather than subclause (i) applied because there was no agreement between the city and the representative under subclause (i).[11]  The court held that as the employees were hired before April 15, 1986, and as the city's practice before that date was to give comp time in lieu of cash, that practice constituted an agreement under subclause (ii), and was permissible under Section 207(*o* )(2)(B).[12]

---

[9]Note 5, *supra.*

[10]*Id.* at 1552-54.

[11]*Id.* at 1552-53.

[12]*Id.* at 1553.

Joining our colleagues of the Fourth and Eleventh Circuits, we hold that, because Texas law prohibits the County from entering into a collective bargaining agreement with the Union—and thus there is no such agreement—the deputies are not covered by subclause (i) of Section 207(*o* )(2)(A). Rather, subclause (ii) of that section applies. Under Section 207(*o* )(2)(B), the County's pay system, which was in effect on April 15, 1986, constituted an agreement between the County and deputies hired prior to that date. For deputies hired after April 15, 1986, the individual compensation form signed by each deputy constituted individual agreements of the type contemplated by Section 207(*o* )(2)(A)(ii). Thus, the County has complied with Section 207(*o* ) and the payment of comp time in lieu of cash is proper.

Nevertheless, the Union argues that, even in light of the Texas law that prohibits political subdivisions from entering into collective bargaining agreements, the County was still required to enter into an agreement with the Union before it could pay deputies in comp time. The Union contends that under Section 207(*o* ) comp time may be authorized pursuant to agreements that are not classified as collective bargaining agreements, thus not violating Texas law. Section 207(*o* )(2)(A)(i) provides that a public agency may provide comp time pursuant to:

> [A]pplicable provisions of a collective bargaining agreement, *memorandum of understanding, or any other agreement between the public agency and representatives of such employees* (emphasis added).

The Union asserts that it represents the deputies in a

non-collective bargaining capacity and that any agreement between the Union and the County would be classified as "any other agreement" under Section 207(*o* ), not in violation of Texas law. The Union also cites TEX.REV.CIV.STAT.ANN., art. 5154c Section 6, which recognizes the right of public employees to present grievances through a "representative" such as the Union, and argues that under that statute, the Union is allowed to deal with the County in a non-collective bargaining capacity.

We reject this argument. Presentation of grievances is acceptable under Texas law because it is a unilateral procedure under which the employee can be represented by anyone he or she chooses, be it a lawyer, clergyman, union or some other person or organization. Texas law prohibits any bilateral agreement between a city and a bargaining agent, whether the agreement is labeled a collective bargaining agreement or something else. Under Texas law, the County could not enter into *any* agreement with the Union.

B. *The Longevity Claim.*

The County pays its deputy sheriffs "longevity pay" each year. Those payments are calculated by multiplying a fixed dollar amount, which the County Commissioners Court determines annually, by the number of years an individual employee has been employed by the County. That total is paid to the employee in monthly installments throughout the year.

The "regular rate of pay" is the rate which is multiplied by one and one-half to arrive at the rate of overtime pay pursuant to Section 7(a) of FLSA.[13]  The County does not include longevity pay in its determination of the "regular rate of pay" for purposes of calculating the rate of overtime pay.  The Union contends that this violates FLSA.  Section 7(e) of FLSA provides in part:

> (e) As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include—
>
> > (1) sums paid as gifts;  payments in the nature of gifts made at Christmas time or on other special occasions, as a *reward for service, the amounts of which are not measured by or dependent on hours worked, production, or efficiency* (emphasis added).[14]

The regulation interpreting Section 207(e) provides that if a payment "is measured by hours worked, production, or efficiency, the payment is geared to wages and hours during the bonus period and is no longer to be considered as in the nature of a gift." [15] The district court concluded that the longevity payments were not geared to wages, efficiency or production and held that they were a "reward for service."  Thus, held the court, the payments qualified as "sums paid as gifts" under Section 207(e)(1) and were properly excluded from the determination of "regular rate of pay."

The Union cites three administrative letter rulings by the Department of Labor for its argument that longevity payments must

---

[13]29 U.S.C. § 207(a).

[14]29 U.S.C. § 207(e).

[15]29 C.F.R. § 778.212 (1989).

be included in "regular rate of pay" for purposes of calculating overtime pay. Those letters are easily distinguishable, however. One letter concerns incentive payments made to employees following the completion of educational or career development programs and is clearly not applicable to the instant case. The other two letters state that longevity payments made pursuant to a city ordinance or a collective bargaining agreement between the employer and employees must be included in "regular rate of pay." In the instant case, no such ordinance or bargaining agreement binds the County to make longevity payments.

The deputies receive the longevity payments regardless of the number of hours worked or wages earned. The payments serve no purpose other than to reward the deputies for their tenure as County employees. The Union cites no authority in support of its argument other than the administrative letter rulings which we have distinguished. As the payments are not measured by or dependent on hours worked, production or efficiency, we hold that the longevity payments qualify as "sums paid as gifts." As such, the County properly excludes the longevity payments from "regular rate of pay."

C. *The Firearms Qualification Claim.*

The Union's complaint alleged that the County wrongfully excluded certain time spent in firearms qualification from the calculation of the number of hours worked by the deputy

sheriffs—thereby depriving deputies of compensation for that time. Texas law requires law enforcement officers to meet firearms proficiency qualifications once each year. The Union and the County agree that *training* time spent to meet that qualification, as well as time spent training for requalification—as distinguished from time spent in a second actual qualification—is not compensable under FLSA, even if such time exceeds a deputy's normal working hours. From 1986 until August 1991, however, the County required its law enforcement officers to meet the proficiency qualifications twice each year.[16] The Union argues that, as the second qualification requirement each year exceeded the state requirement of one qualification per year, any overtime spent by the deputies in qualifying a second time during each of those years was compensable.

Job-related training activities are generally compensable under FLSA,[17] but the FLSA regulations provide that required training is not compensable in the following situations:

> (1) Attendance outside of regular working hours at specialized or follow-up training, which is *required by law* for certification of public and private sector employees within a particular governmental jurisdiction (e.g., certification of public and private emergency rescue workers), does not constitute compensable hours of work for public employees within that jurisdiction and subordinate jurisdictions.

> (2) Attendance outside of regular working hours at specialized or follow-up training, which is *required* for certification of employees of a governmental jurisdiction *by law of a higher level of government (e.g., where a State or county law* imposes

---

[16]The County now requires its officers to qualify only once each year.

[17]29 C.F.R. 785.27 (1989).

a training obligation on city employees), does not constitute compensable hours of work.[18]

The Union argues that, although overtime related to the first qualification during a year is excluded from compensability pursuant to the regulations, as the second qualification during a year is required by county policy only—not by state or county law—any overtime spent meeting the second qualification requirement is not an exception to the general rule of compensability.

Central to our determination here is the fact that the district court bifurcated this case into two stages—the first stage was supposed to address only liability and the second stage was supposed to address damages.  The Union argues that, despite the bifurcation, the district court's holding in fact addressed the issue of damages during the first, or liability stage, at a time when the parties had not yet conducted discovery.  The Union asserts that the sole purpose of the liability stage of the proceedings was to determine whether in fact the County maintained a policy of not compensating deputies for any overtime spent training to meet either of the semi-annual qualification requirements and, if so, whether implementation of that policy would violate the overtime provision of FLSA.  Thus, the Union contends, it should not have been required in the liability stage to produce proof that any deputies had actually trained twice without being compensated for overtime on either occasion, and the district court erred in ruling on the damages stage before the

---

[18]29 C.F.R. 553.226(b) (1989) (emphasis added).

Union had an opportunity to present summary judgment proof on that issue. The Union urges that, inasmuch as the twice-a-year qualification policy, if applied, would entitle deputies to overtime, we should remand this case to the district court with instructions to allow the Union to adduce its evidence of actual damages suffered, on a deputy by deputy basis, whether by summary judgment proof, in an evidentiary hearing, or in a full-blown trial. We agree.

In our *de novo* review of this case, we hold that the district court erred in two respects. First, the district court erred in its determination of the factual circumstances under which a deputy would be entitled to overtime compensation. The district court stated that if a deputy met the State-required annual qualification but failed to meet the County's semi-annual qualification requirements within the same year, and as a result that deputy was required to participate in remedial training which caused him to work more than forty hours during a week, the deputy would be entitled to overtime compensation. The district court held that the Union's claim did not survive the County's motion for summary judgment, however, because the Union had failed to demonstrate by summary judgment proof that one or more of the deputies had not in fact been compensated in such a situation.

In the situation discussed by the district court, an officer who twice tries but fails even once to meet the certification requirements must make additional attempts until he or she

succeeds. But the Union concedes that time spent by an officer in training for such "make-up" qualification tests is not compensable overtime under FLSA because the County allows participation in such remedial activities to take place during normal working hours. The situation actually being contested, though, is different. It questions overtime entitlement of a deputy who *passes* his shooting test twice a year on his own time without being paid overtime for either event. Thus, contrary to the district court's conclusion, deputies are claiming entitlement to overtime compensation *only* if they spend time in excess of normal working hours to meet the requirements for the second shooting qualification during a year after having already worked on their own time to meet the requirement once that year.

The district court's second error was in granting summary judgment in favor of the County on the firearms qualification issue. A memorandum dated February 16, 1987 from Sheriff Klevenhagen to all Sheriff's Office personnel provided:

> Firearms requalification for peace officers is required by the State of Texas as a condition of maintaining the Peace Officer License. A thorough search of applicable law by the office of the County Attorney has determined that under this condition the time spent in demonstrating firearms proficiency is not compensable time when occurring outside normal duty hours. *Therefore, effective immediately, no overtime compensation will be granted for time spent on firearms requalification* (emphasis added).

That summary judgment proof clearly showed that the County did in fact have a policy under which deputies would receive no compensation for any overtime spent meeting either of the semi-annual qualification requirements. Whether any deputies were

actually deprived of overtime compensation because of the County's firearm qualification policy should have been addressed only at the damages stage of the proceedings. Thus, the district court "jumped the gun" when it granted summary judgment in favor of the County before the Union had an opportunity to conduct discovery and present proof of damages.

We therefore reverse the district court's grant of summary judgment on this issue and remand for further proceedings. As we have concluded that the County had a policy which potentially could deprive deputies of their just compensation, the Union must be allowed to discover and present proof, if there be any, of which deputies suffered damages as a result of that policy, and to what extent. To establish that its members actually incurred damages, the Union must show that one or more deputies (1) trained on their own time to meet *both* semi-annual qualification requirements during a year, and (2) received no overtime compensation for either occasion. Obviously, each deputy will be limited to recovery of overtime for only one such qualification per year because the other is required by state law and therefore is not compensable.

III.

CONCLUSION

As Texas law prohibits the County from entering into an agreement with the Union, the County's pay system constitutes an

agreement between the County and the individual deputies in compliance with Section 7(*o* ) of FLSA.  Therefore, the district court did not err in granting summary judgment in favor of the County on the Union's comp time claim.  Neither did the district court err in granting summary judgment in favor of the County on the Union's longevity payments claim because the payments were not measured by or dependent on hours worked, production or efficiency but qualified as gifts.  The district court did err, however, in granting summary judgment in favor of the County on the Union's firearms qualification claim.  We therefore REVERSE the district court's grant of summary judgment in favor of the County on that claim and REMAND to the district court for the sole purpose of determining whether any deputies suffered damages and, if so, to what extent.  In all other respects, we AFFIRM the judgment of the district court.