Joseph R. THEISEN and Richard A. Radintz, Plaintiffs,

v.

CITY OF MAPLE GROVE, Defendant.

Civil No. 97–2565(DSD/JMM).

United States District Court, D. Minnesota.

Jan. 15, 1999.

Joseph B. Marshall, Marshall & Assoc., Circle Pines, MN, for plaintiffs.

Julie Anne Fleming–Wolfe, Fleming–Wolfe Law Office, St. Paul, MN, for defendant.

## ORDER

DOTY, District Judge.

This matter is before the court for a determination of plaintiffs' damages and on plaintiffs' motions for judgment on the verdict and to compel defendant to provide data allegedly needed to calculate the proper measure of damages. By a special verdict returned on October 22, 1998, a jury determined that: (1) plaintiffs and defendant had not reached an agreement regarding compensation for work to be performed providing home care maintenance of certain police canines; (2) both plaintiffs had performed work for which they were improperly compensated, the defendant had actual or constructive knowledge of the work performed by plaintiffs or routinely permitted the work, and both plaintiffs had shown the amount and extent of the uncompensated work performed as a matter of just and reasonable inference; (3) both plaintiffs had performed 15.8 minutes of work on both on-duty and off-duty days providing home care maintenance of their canines for which they were not and should be compensated; and (4) defendant did not willfully violate the Fair Labor Standards Act. The question of damages was left to the court, and after allowing both parties to submit briefing on the proper measure of damages, that issue is now ripe for decision.

A number of issues must be addressed in computing plaintiffs' damages: (1) the proper time period for computing back wages under the statute of limitations contained in the Fair Labor Standards Act (hereafter "FLSA"); (2) the date of plaintiffs' claim; (3) the components properly included in plaintiffs' rate of pay; and (4) whether liquidated damages are appropriate in this case. The court will address each issue in turn, as well as plaintiffs' two related motions.

Under 29 U.S.C. § 255(a), the statute of limitations applicable to the FLSA bars claims arising more than two years after

"the cause of action accrued" unless the cause of action arises out of a willful violation, in which case a three year period applies. The jury in this case determined that defendant did not willfully violate the FLSA; therefore, plaintiffs' damages are retrospectively cognizable for two years from the time the cause of action accrued.

To determine the date from which the two year limitations period extends backwards, the court must establish the date of the claim. The parties take different positions as to when the cause of action accrued. Defendant argues that the cause of action accrued the day the complaint in this matter was filed, November 19, 1997. Plaintiffs, on the other hand, claim that plaintiff Theisen was told by Chief Otto that the date of the claim would be the date he and plaintiff Radintz met with Chief Otto to discuss plaintiffs' FLSA demands, August 28, 1997. They claim that at this meeting Chief Otto told them to research what other cities were doing with regard to their canine officers and the FLSA. When plaintiffs completed their research, they were forced to meet with Captain Richardson on two occasions rather than with Chief Otto, causing further delay in filing their complaint. Plaintiffs aver that if they had known on August 28, 1997, that they would not have another meeting with Chief Otto after compiling their data they would have immediately filed their complaint after the first meeting.

While plaintiffs concede that the date of the claim would normally be the date the complaint was filed, they contend that in this case their employer took actions that the employer should have understood would cause them to delay filing, and equitable estoppel should extend the date of the claim back to August 28, 1997. *See Kriegesmann v. Barry–Wehmiller Co.*, 739 F.2d 357, 359 (8th Cir.1984), *cert. denied*, 469 U.S. 1036, 105 S.Ct. 512, 83 L.Ed.2d 402 (1984) (" 'The statute of limitations will not be tolled on the basis of equitable estoppel unless the employee's failure to file in timely fashion is the consequence either of a deliberate design by the employer or of actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.' ") (quoting *Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir.1982)). *See also Hamilton v. West*, 30 F.3d 992, 994 (8th Cir.1994) (finding equitable estoppel not warranted where plaintiff failed to introduce evidence that defendant acted "pursuant to a 'deliberate design' or an unmistakable understanding that [plaintiff] would delay filing his charges.").[1]

Plaintiffs' view of the August 28, 1997, meeting is undercut by a letter written by their counsel on November 13, 1997, to Alan Madsen, City of Maple Grove Administrator, and Chief Otto. In that letter, counsel suggests:

To facilitate an orderly examination of the issues in this case, and to further facilitate meaningful discussions as to the claim and defenses thereto, I request and I suggest that we enter into an agreement which will toll the statute of limitations thus allowing us to debate those matters without further damages to the officers, or litigation expenses to the city.

Letter Attached to Def.'s Response to Pls.' Post–Trial Mots. at 4. It is fair to assume that if Chief Otto had indeed told plaintiffs that August 28, 1997, would serve as the date of their claim plaintiffs would have related this information to their counsel, who would not have then requested a tolling agreement. Indeed, there is no evidence in the record of actions that defendant should unmistakably have understood would cause plaintiffs to delay filing their charge. The applicable two-year retrospective period for which plaintiffs are to

---

1. Plaintiffs concede that because they were aware of the right to bring a cause of action directly in federal district court, equitable tolling is not warranted on the basis of any deliberate design on the part of defendant to confuse them of their rights.

be compensated runs from November 19, 1995, to November 19, 1997, for Officer Radintz and November 19, 1995, to August 3, 1997, for Officer Theisen.[2]

█ The next step is to determine the regular hourly rate from which defendant's overtime compensation should be derived. The jury found plaintiffs had performed 15.8 minutes of overtime work on both on-duty and off-duty days providing home care maintenance of their canines for which they were not and should be compensated. The FLSA provides that employees must be paid overtime compensation "at a rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1). The "regular rate" is further defined as "all remuneration for employment paid to, or on behalf of, the employee[.]" 29 U.S.C. § 207(e). This definition has been construed to mean the hourly rate actually paid to the employee for the normal, non-overtime work week for which he or she is employed. *See Aaron v. City of Wichita, Kan.*, 54 F.3d 652, 655 (10th Cir.1995) (citing *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 203, 67 S.Ct. 1178, 91 L.Ed. 1432 (1947), *modified*, 331 U.S. 795, 67 S.Ct. 1726, 91 L.Ed. 1822 (1947) and *Walling v. Helmerich & Payne*, 323 U.S. 37, 40, 65 S.Ct. 11, 89 L.Ed. 29 (1944)). In determining the "regular rate," the court's focus should be on ensuring that employees are getting the full excess compensation called for under the FLSA. *Herman v. Anderson Floor Co., Inc.*, 11 F.Supp.2d 1038, 1042 (E.D.Wis.1998) (citing *Baker v. Barnard Constr. Co. Inc.*, 863 F.Supp. 1498, 1500 (D.N.M.1993)). "The key point in calculating the regular rate of an employee's compensation for purposes of the Act is whether it is compensation for work performed during that work week." *Herman*, 11 F.Supp.2d at 1042.

The parties take divergent views of what constitutes the hourly rate actually paid to plaintiffs. Plaintiffs contend that the hourly rate includes not only their actual wage rate, but also money paid in lieu of increased employer contributions to insurance, longevity payments, the specialist rate, and rates for being a field training officer and acting supervisor. Defendant, on the other hand, takes the position that only the actual wage rate should constitute the hourly rate for overtime purposes. While the actual wage rate is clearly included in the "regular rate" utilized for computing overtime compensation and merits no further discussion, the court will address in greater detail the other possible components of the "regular rate."

The first contested element is a monthly payment to plaintiffs made in lieu of increased employer contributions to insurance which is not added to the base wage rate set forth in Appendix A to the relevant collective bargaining agreements. This payment was $30 per month in 1995, $40 in 1996, $50 in 1997, and $60 in 1998. Plaintiffs assume in their calculations of the overtime compensation due that they should receive additional "insurance" payments for the 15.8 overtime minutes the jury found they worked each day. *See* Labor Agreement Between the City of Maple Grove and Law Enforcement Labor Services, Inc., Plaintiff's Trial Exhibit 1, 1994–95 Agreement and 1996–98 Agreement at 20.3. According to plaintiffs' calculations, this constitutes $0.173 per hour in 1995, $0.231 per hour in 1996, $0.289 per hour in 1997, and $0.346 per hour in 1998.[3]

█ The amount of cash paid to plaintiffs in lieu of increased insurance contributions is not measured by or dependent upon the hours worked by plaintiffs. The payment is a sum certain paid each month that does not vary if plaintiffs work more

---

**2.** Officer Theisen's police canine died on August 3, 1997. Because he discontinued providing home care maintenance for the canine on that date, he may not recover damages from August 4, 1997, forward.

**3.** Because plaintiff Theisen's canine died on August 3, 1997, only plaintiff Radintz is entitled to damages after that date.

or less than 40 hours per week. Because it is not part of the hourly rate paid to plaintiffs, such sum should not be included in the calculation of the "regular rate" used in determining overtime compensation. *See* 29 U.S.C. § 207(e)(2) ("[T]he 'regular rate' ... shall not be deemed to include ... payments to an employee which are not made as compensation for his hours of employment[.]").

The next amount at issue is the inclusion of longevity payments in the determination of the "regular rate." These amounts are as follows:[4]

| | | |
|---|---|---|
| 1995: | Plaintiff Radintz | .$3,641 ($1.751 per hour) |
| | Plaintiff Theisen | $1,370 ($0.658 per hour) |
| 1996: | Plaintiff Radintz | $3,750 ($1.802 per hour) |
| | Plaintiff Theisen | $1,411 ($0.678 per hour) |
| 1997: | Plaintiff Radintz | $3,863 ($1.857 per hour) |
| | Plaintiff Theisen | $1,453 ($0.699 per hour) |
| 1998: | Plaintiff Radintz | $3,979 ($1.913 per hour) |

In considering whether longevity payments should be included in the "regular rate," a dearth of Eighth Circuit precedent has forced the court to consider authority from several other circuits. The Fifth Circuit has held that where neither a city ordinance nor a collective bargaining agreement between an employer and its employees addresses longevity pay, such payments are not properly included in the calculation of the "regular rate" of pay. *Moreau v. Klevenhagen,* 956 F.2d 516, 520–21 (5th Cir.1992), *aff'd,* 508 U.S. 22, 113 S.Ct. 1905, 123 L.Ed.2d 584 (1993). The basis of the *Moreau* decision was that in such a situation longevity payments are not tied to the number of hours worked by an employee or his or her production or efficiency and serve only as a reward for tenure. *Id.* at 521. However, in *Featsent v. City of Youngstown,* 859 F.Supp. 1134, 1136 (N.D.Ohio 1993), the court held that longevity payments made pursuant to a city ordinance or a collective bargaining agreement must be included in the "regular rate" used to compute overtime because the city was required to make the payments by law and by contract and such

payments could not therefore be classified as gifts or discretionary bonuses. In so holding, the court relied on interpretations provided by the United States Department of Labor that: (1) non-discretionary bonuses must be included in the computation of overtime, while discretionary bonuses are excluded (29 C.F.R. §§ 778.208–211); (2) a bonus is discretionary if the employer retains discretion both as to the fact of payment and the amount of payment (29 C.F.R. § 778.211(b)); and (3) to be excluded the amount must be determined by the employer without prior contract, agreement, or promise (29 C.F.R. § 778.211(b)). *Featsent,* 859 F.Supp. at 1136. Based on these tenets, the court found that any bonus which was the result of collective bargaining is a non-discretionary bonus, and must be included in the "regular rate" of pay upon which overtime pay is calculated. *Id.* The Sixth Circuit specifically affirmed on this point. *Featsent v. City of Youngstown,* 70 F.3d 900, 905 (6th Cir .1995). Both *Moreau* and *Featsent* were discussed in *Local 359 Gary Firefighters, AFL—CIO—CLC v. City of Gary,* 1995 WL 934175 (N.D.Ind. Aug.17, 1995) (unpublished opinion). There, the court was presented with a situation where the amount of longevity pay received was not based on the number of hours worked in a pay period but rather on the number of years of employment. *Local 359,* 1995 WL 934175 at *6. Such payments, however, were not the result of a collective bargaining agreement or any other type of agreement between the parties. *Id.* After determining that the inclusion of longevity pay turns on whether the payment is construed as a gift or as a fixed amount given pursuant to a city policy, the court found that the amount of longevity pay was not discretionary and held that the city must therefore include such payments in the "regular rate." *Id.* at *7.

---

**4.** The amount per hour is determined by dividing the annual payment by the 2080 hours of non-overtime worked per year.

■ Here, the collective bargaining agreements between the parties specifically set forth the applicable longevity rates in Appendix A of each agreement. Article XX of the applicable agreements states that "[t]he total employee compensation is wages, and an insurance contribution as shown in Appendix A." *See* Collective Bargaining Agreement at 20.1. Defendant has no discretion in making the longevity payments, as it is part of plaintiffs' compensation as delineated in the applicable collective bargaining agreements. The court therefore finds *Feasent* and *Local 359* to be more persuasive than *Moreau* in this instance, as the former cases involved nondiscretionary longevity payments, while the latter case did not. The applicable longevity payments will therefore be included in the "regular rate."

The next amount at issue is the canine handler specialist rate paid plaintiffs. As canine officers, both plaintiffs received $125 per month in 1995, 1996, 1997[5] and plaintiff Radintz received $125 per month in 1998. This amounts to $1,500 for both plaintiffs in 1995, 1996, and 1997 and $1,500 for plaintiff Radintz in 1998, or $0.721 per hour in those years. Defendant cites *Albanese v. Bergen County, N.J.*, 991 F.Supp. 410 (D.N.J.1997) in support of its argument that the canine handler rate should not only be excluded from the computation of the "regular rate," but that the total amount paid during the relevant period must also be deducted from the overtime found to be owing plaintiffs. In *Albanese*, canine officers and their employer negotiated for and included a stipend for K–9 activities in their collective bargaining agreement. After finding plaintiffs entitled to overtime compensation for home care of their dogs, the court was forced to determine whether this stipend should be included in the "regular rate" for purposes of calculating the overtime wages due. The court first examined the compensation specifically excluded from the "regular rate" by 29 U.S.C. § 207(e)(5)–(7),[6] and noted that "[t]he plain wording of the statute makes it clear that extra compensation provided by premium rates other than those described cannot be treated as overtime premiums." *Albanese*, 991 F.Supp. at 422–23 (citing 29 C.F.R. § 778.207). Those premiums not included in § 207(e)(5), (6), or (7) "must be included in the employee's regular rate before statutory overtime compensation is computed." *Id.* at 423. While the court found that the premium paid plaintiffs did not fall within any exception to inclusion in the "regular rate," the court concluded that under the facts of that case the usual deference paid to the Department of Labor's regulations was not warranted, and exclusion from the "regular rate" was appropriate. *Id.* The court's decision was based on its belief that inclusion would permit plaintiffs to recover a windfall by receiving the stipend for extra work related to K–9 activities while also using that money to determine their regular hourly rate. *Id.* The court also determined, without further explanation, that the stipends should serve as a credit against any award of overtime compensation. *Id.*

5. Plaintiff Theisen received this amount through August 17, 1997.

6. 29 U.S.C. § 207(e) provides that the following shall not be included in computation of the "regular rate":

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee[;]

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek[;]

(7) extra compensation provided by·a premium rate paid to the employee, in pursuance of an applicable employment contract or collective bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday ... or workweek ... applicable to such employee[.]

Here, the jury determined that plaintiffs and defendant had not reached an agreement regarding compensation for work to be performed providing home care maintenance of certain police canines. A corollary of this finding is that the $125 monthly canine handler rate was not tied to the time plaintiffs spent handling the canines but instead served as compensation for specialized training and the increased responsibility of handling the canines. Defendant is therefore mistaken in asserting that the stipend is for "performing the dog handling work." Def. City of Maple Grove Post–Trial Mem. (Docket No. 69) at 9. If such were the case, the jury would have found that the parties had an agreement regarding compensation for the work to be performed. Like *Albanese,* the canine handler rate in this case does not fall within any exception to inclusion in the "regular rate." Unlike that case, however, the court here will not disregard the Department of Labor Guidelines. Based on the jury's finding that no agreement existed, the court finds that the canine handler rate compensates plaintiffs for their skills and responsibilities in caring for the canines during the 2080 hours called for by the relevant collective bargaining agreements. Because plaintiffs spent 15.8 minutes on both on-duty and off-duty days beyond the 2080 hours called for by the contract, they will not receive a windfall by recovering overtime compensation based in part on the skills they used and responsibility they exercised beyond the 2080 hours. Therefore, the court concludes that plaintiffs correctly included the canine handler rate in the "regular rate." This is in accord with the plain language of the statute and regulations promulgated by the Department of Labor.

The final components of the "regular rate" at issue are rates plaintiffs claim they have earned for being field training officers and acting supervisors. In their memorandum, plaintiffs claim that field training and acting supervisor rates should be included in the court's calculation of the "regular rate," but are unable to attach a specific dollar amount for these responsibilities for any of the years in question because this information "has not yet been provided by the defendant so this figure remains to be calculated." In conjunction with this issue, plaintiffs have filed a motion to compel defendant to provide data necessary to calculate both these rates. In its initial memorandum, anticipating that plaintiffs would seek inclusion of these rates, defendant contends that "[p]laintiffs' argument need not be addressed because plaintiffs did not receive ... any of the other items claimed to be necessarily included in the calculation of wages." Def. City of Maple of Grove Post–Trial Mem. (Docket No. 69) at 4 n. 2. In its response to plaintiffs' brief, defendant argues that plaintiffs' request for production is inappropriate because it seeks production of data that was produced during discovery or asks defendant to create data that otherwise does not exist. Further, defendant argues that because plaintiffs failed to introduce into evidence any testimony regarding their service as senior supervising or field training officers, these matters cannot be included in any calculation of damages.

The court initially notes that neither party makes any legal argument on the issue of whether the "FTO Rate" and "Acting Supervisor Rate" should be included in the court's calculation of the "regular rate." Legal uncertainty aside, the court also notes that both these rates are included in Appendix A in the relevant collective bargaining agreements. While the agreements clearly state the amount per hour of time worked that is due plaintiffs when acting as a field trainer or acting supervisor, there is no evidence before the court concerning the time plaintiffs acted in these capacities, if any, during the relevant time period. Whereas the longevity rate is always applicable, the acting supervisor or field trainer rate is not. Even if the court were to find these rates applicable, therefore, no evidence exists to make the necessary calculation. While making no

finding on the initial question of the legal propriety of including these rates in the "regular rate," the court concludes that plaintiffs' failure to introduce any evidence that they served in these roles for any specific period precludes their inclusion. Plaintiffs' motion to compel defendant to provide data will be denied.

Having determined the components of the "regular rate," the court is now in a position to determine what this rate is for each plaintiff in each year:

Plaintiff Radintz

| 1995 | Base Pay (per hour) | $20.479 |
| | Longevity Pay (per hour) | $ 1.751 |
| | Specialist Pay (per hour) | $ 0.721 |
| | Total (per hour) | $22.951 |
| 1996 | Base Pay (per hour) | $21.146 |
| | Longevity Pay (per hour) | $ 1.802 |
| | Specialist Pay (per hour) | $ 0.721 |
| | Total (per hour) | $23.669 |
| 1997 | Base Pay (per hour) | $21.543 |
| | Longevity Pay (per hour) | $ 1.857 |
| | Specialist Pay (per hour) | $ 0.721 |
| | Total (per hour) | $24.121 |
| 1998 | Base Pay (per hour) | $22.189 |
| | Longevity Pay (per hour) | $ 1.913 |
| | Specialist Pay (per hour) | $ 0.721 |
| | Total (per hour) | $24.823 |
| 1999[7] | Base Pay (per hour) | $22.189 |
| | Longevity Pay (per hour) | $ 1.913 |
| | Specialist Pay (per hour) | $ 0.721 |
| | Total (per hour) | $24.823 |

Plaintiff Theisen

| 1995 | Base Pay (per hour) | $20.479 |
| | Longevity Pay (per hour) | $ 0.650 |
| | Specialist Pay (per hour) | $ 0.721 |
| | Total (per hour) | $21.850 |
| 1996 | Base Pay (per hour) | $21.146 |
| | Longevity Pay (per hour) | $ 0.678 |
| | Specialist Pay (per hour) | $ 0.721 |
| | Total (per hour) | $22.545 |
| 1997 | Base Pay (per hour) | $21.543 |
| | Longevity Pay (per hour) | $ 0.699 |
| | Specialist Pay (per hour) | $ 0.721 |
| | Total (per hour) | $22.963 |

The Fair Labor Standards Act provides that plaintiffs shall be compensated at "one and one-half" time the regular rate at which they are employed for the 15.8 minutes per day spent caring for the canines. *See* 29 U.S.C. § 207(a)(1). This results in the following hourly overtime rates:

Plaintiff Radintz

| 1995 | $22.951 × 1.5 | $34.4265 |
| 1996 | $23.669 × 1.5 | $35.5035 |
| 1997 | $24.121 × 1.5 | $36.1815 |
| 1998 | $24.823 × 1.5 | $37.2345 |
| 1999 | $24.823 × 1.5 | $37.2345 |

Plaintiff Theisen

| 1995 | $21.850 × 1.5 | $32.7750 |
| 1996 | $22.545 × 1.5 | $33.8175 |
| 1997 | $22.963 × 1.5 | $34.4445 |

The date of the claim in this case has been established by the court as November 19, 1995, two years prior to the date of the filing of the complaint. The resulting number of days involved are:

Plaintiff Radintz

| 1995 | 42 days |
| 1996 | 366 days |
| 1997 | 355 days |
| 1998 | 365 days |
| 1999 | 15 days [8] |

Plaintiff Theisen

| 1995 | 42 days |
| 1996 | 366 days |
| 1997 | 213 days [9] |

7. The record before the court contains wage information only through calendar year 1998. Plaintiffs' counsel has informed the court that no wage scale exists for calendar year 1999 because the parties do not yet have a contract covering this period. Counsel avers that when a new contract is eventually entered into any wage changes will be applied retroactively. As the parties are currently operating under 1998 wages, the court will utilize the same for purposes of determining plaintiffs' damages for the first fifteen days of 1999.

8. Judgment is entered as of today's date, January 15, 1999.

9. Plaintiff Theisen's canine died on August 3, 1997. His claim therefore stops on this date. Although August 17, 1997, this two week in-

The jury established that each plaintiff spent 15.8 minutes per day in the home care maintenance of their canines. This is equivalent to .2633 hours per day. To determine plaintiffs' damages in each year, therefore, the court must multiply the number of hours spent each day by the number of days in each year and the overtime rate, as calculated above:

Plaintiff Radintz

| | | | | | |
|---|---|---|---|---|---|
| 1995 | .2633 | × 42 days | × $34.4265 | $ | 380.71 |
| 1996 | .2633 | × 366 days | × $35.5035 | $ | 3,421.39 |
| 1997 | .2633 | × 365 days | × $36.1815 | $ | 3,477.21 |
| 1998 | .2633 | × 365 days | × $37.2345 | $ | 3,578.40 |
| 1999 | .2633 | × 15 days | × $37.2345 | $ | 147.06 |

| | |
|---|---|
| Total Damages | $11,004.77 |

Plaintiff Theisen

| | | | | | |
|---|---|---|---|---|---|
| 1995 | .2633 | × 42 days | × $32.775 | $ | 362.45 |
| 1996 | .2633 | × 366 days | × $33.8175 | $ | 3,258.92 |
| 1997 | .2633 | × 213 days | × $34.4445 | $ | 1,931.75 |

| | |
|---|---|
| Total Damages | $ 5,553.12 |

The final damages question before the court is the applicability of liquidated damages. The FLSA provides that "[a]ny employer who violates the provisions of ... section 207 ... shall be liable to the employee or employees affected in the amount of ... their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act ... the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified [in 29 U.S.C. § 216]." 29 U.S.C. § 260. *See also Cross v. Arkansas Forestry Com'n,* 938 F.2d 912, 917 (8th Cir.1991) ("The FLSA provides for an award of liquidated damages to an employee to remedy an employer's violation of the FLSA.... However, the trial court has

discretion not to award liquidated damages if the employer demonstrates that the violation was in good faith and objectively reasonable."); *Barrentine v. Arkansas–Best Freight System, Inc.,* 750 F.2d 47, 51 n. 5 (8th Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2116, 85 L.Ed.2d 480 (1985) ("[E]ven if the employer shows both subjective good faith and objectively reasonable grounds for believing that its actions were not in violation of the statute, remission of liquidated damages remains within the sound discretion of the trial court.").

The jury in this case, after finding that the parties had not reached an agreement regarding compensation for work to be performed providing home care maintenance of the canines and that plaintiffs had performed work for which they were improperly compensated, found that defendant had not willfully violated the FLSA. The question of willfulness was submitted to the jury to determine whether a two or three year statute of limitations period applies. Other courts have found that the same willfulness standard for the statute of limitations issue applies to the liquidated damages issue. *See Brinkman v. Dept. of Corrections of State of Kan.,* 21 F.3d 370, 372–3 (10th Cir.1994), *cert. denied,* 513 U.S. 927, 115 S.Ct. 315, 130 L.Ed.2d 277 (1994); *E.E.O.C. v. City of Detroit Health Dept.,* 920 F.2d 355, 359–60 (6th Cir.1990) (Guy, J., concurring). The court agrees with this conclusion, and finds that the same facts which supported the jury's determination that defendant had not acted willfully for statute of limitations purposes also militates against an award of liquidated damages.

The court has read the brief order of Judge Kyle in *Rudolph v. Metropolitan Airports Commission,* Civil No. 3–94–702 (Docket No. 98, dated June 23, 1995) attached as Appendix B to plaintiffs' memorandum on damages. In his order, Judge Kyle noted that in that case:

terim period should be excluded from the damage calculation because Theisen spent no

time during this period in the home care maintenance of a canine.

[t]he jury concluded the Defendant's violation of the Fair Labor Standards Act was not "willful" for purposes of extending the applicable statute of limitations period under 29 U.S.C. § 255(a). This finding does not preclude an award of liquidated damages. Under · § 255(a), the employee bears the burden of proving the employer knew or showed reckless disregard of whether its conduct violated the Fair Labor Standards Act. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988); *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). This is significantly different than the standard applicable to liquidated damages under § 260. *See Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 907–908 (3rd Cir.1991).

Order dated June 23, 1995 at 2 n. 2. There is no mention in Judge Kyle's opinion of the holding in *Brinkman* that in a jury case the same willfulness standard for the statute of limitations issue applies to the liquidated damages issue. Given that *Martin,* relied upon by Judge Kyle for the proposition that showing an employer did not willfully violate the Act does not satisfy the requirements of § 260, involved a bench trial in which there were no jury findings on the issue of willfulness, the court has reservations regarding the correctness of this statement.

■ Further, even if the court were not bound by the jury's determination on willfulness, an independent review of the facts of this case demonstrates that defendant acted in good faith and had reasonable grounds for believing that its omission was not a violation of the FLSA. The primary issue in this case was whether a reasonable agreement existed between the parties for the home care of the canines. Defendant had always paid plaintiffs a canine handler rate, and the evidence demonstrated that plaintiffs had objected to the amount of this payment rather than any failure of defendant to compensate

them at all for this work. Plaintiffs' exhibits 13 and 14 are illustrative of defendant's efforts to act in accordance with the law. These exhibits are memoranda directing that the Maple Grove Police Department take various actions to comply with the FLSA and limit defendant's liability. Given defendant's understanding that the payment of a canine handler rate for the time spent in the home care maintenance of the canines under the terms of a reasonable agreement was permissible and its belief that such an agreement existed, the court finds that defendant acted in good faith and had reasonable grounds for believing that its omission was not a violation of the FLSA.

■ In the absence of liquidated damages, plaintiffs in this case are entitled to recover prejudgment interest in order to fully compensate them for the losses they have suffered. *See Hultgren v. County of Lancaster, Neb.,* 913 F.2d 498, 510 (8th Cir.1990); *Ford v. Alfaro,* 785 F.2d 835, 842 (9th Cir.1986) (citing cases from a number of circuits where prejudgment interest found warranted in the absence of a liquidated damage award). "Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. U.S.,* 479 U.S. 305, 310 n. 2, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987).

The general interest rate utilized by the United States Code is set out at 28 U.S.C. § 1961(a):

Interest shall be allowed on any money judgment in a civil case recovered in a district court.... Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

The court finds such rate appropriate in this case from the date of judgment, January 15, 1998.

Finally, the court finds that plaintiffs are the prevailing parties in this litigation for purposes of recovering attorneys fees and costs. 29 U.S.C. § 216(b) provides that the court shall "in addition to any judgment awarded to the ... plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The procedure for seeking attorney's fees is set forth by District of Minnesota Local Rule 54.3.

Defendant contends that plaintiffs are not the prevailing party on all of the issues presented by this case. While defendant acknowledges that the determination that no agreement existed between the parties regarding compensation for home care was in plaintiffs' favor, it points out that the jury also found that plaintiffs spent "only" 15.8 minutes per day to care for the animals and that defendant had not willfully violated the FLSA. Defendant argues that a judgment indicative of a verdict partially in plaintiffs' favor is appropriate in this case.

The court concludes that plaintiffs are the prevailing parties in this litigation and that judgment should be entered in their favor. The jury found that plaintiffs had performed work for which they were improperly compensated. While defendant's violation was found not to be willful, the jury did find that plaintiffs had established their prima facie case of a FLSA violation. The court will therefore entertain plaintiffs' request for attorney's fees and costs, and will determine the appropriate amount of such fees when presented with that issue.

Therefore, based on a review of the file, record, and all the evidence presented in this case, **IT IS HEREBY ORDERED** that:

1. Plaintiff Radintz is awarded judgment against defendant for earned but unpaid wages in the amount of $11,004.77 plus prejudgment interest;

2. Plaintiff Theisen is awarded judgment against defendant for earned but unpaid wages in the amount of $5,553.12 plus prejudgment interest;

3. Judgment against defendant and in favor of plaintiffs shall be entered as of today's date, January 15, 1998;

4. Plaintiffs' motion for leave to petition the court for an award of attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 216(b) and District of Minnesota Local Rule 54.3 is granted;

5. Plaintiffs' motion to compel defendant to provide data needed to calculate damages is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**