# MOREAU ET AL. *v.* KLEVENHAGEN, SHERIFF, HARRIS COUNTY, TEXAS, ET AL.

No. 92–1.  Argued March 1, 1993—Decided May 3, 1993

*Michael T. Leibig* argued the cause for petitioners. With him on the briefs were *Laurence Gold* and *Walter Kamiat.*

*Harold M. Streicher* argued the cause for respondents. With him on the brief were *Murray E. Malakoff* and *Mike Driscoll.* *

JUSTICE STEVENS delivered the opinion of the Court.

The Fair Labor Standards Act (FLSA or Act) generally requires employers to pay their employees for overtime work at a rate of 1½ times the employees' regular wages.[1] In 1985, Congress amended the FLSA to provide a limited

---

*Briefs of *amici curiae* urging affirmance were filed for the State of Missouri by *William L. Webster*, Attorney General, *Bruce Farmer*, Assistant Attorney General, *Jack L. Campbell*, and *William E. Quirk;* for the National Association of Counties et al. by *Richard Ruda* and *Charles J. Cooper;* and for the Texas Municipal League et al. by *Susan M. Horton.*

[1] 52 Stat. 1063, as amended, 29 U. S. C. § 207(a).

exception to this rule for state and local governmental agencies. Under the Fair Labor Standards Amendments of 1985 (1985 Amendments), public employers may compensate employees who work overtime with extra time off instead of overtime pay in certain circumstances.[2] The question in this case is whether a public employer in a State that prohibits public sector collective bargaining may take advantage of that exception when its employees have designated a union representative.

Because the text of the 1985 Amendments provides the framework for our entire analysis, we quote the most relevant portion at the outset. Subsection 7(o)(2)(A) states:

---

[2] The relevant portion of the 1985 Amendments, 99 Stat. 790, is codified at 29 U. S. C. § 207(o). It provides:

"§ 207. Maximum hours.

.          .          .          .          .

"(1) Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with this subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.

"(2) A public agency may provide compensatory time under paragraph (1) only—

"(A) pursuant to—

"(i) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or

"(ii) in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work; and

"(B) if the employee has not accrued compensatory time in excess of the limit applicable to the employee prescribed by paragraph (3).

"In the case of employees described in clause (A)(ii) hired prior to April 15, 1986, the regular practice in effect on April 15, 1986, with respect to compensatory time off for such employees in lieu of the receipt of overtime compensation, shall constitute an agreement or understanding under such clause (A)(ii). Except as provided in the previous sentence, the provision of compensatory time off to such employees for hours worked after April 14, 1986, shall be in accordance with this subsection."

"(2) A public agency may provide compensatory time [in lieu of overtime pay] only—

"(A) pursuant to—

"(i) applicable provisions of a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees; or

"(ii) in the case of employees not covered by subclause (i), an agreement or understanding arrived at between the employer and employee before the performance of the work . . . ."

Petitioners are a group of employees who sought, unsuccessfully, to negotiate a collective FLSA compensatory time agreement by way of a designated representative. The narrow question dispositive here is whether petitioners are "employees not covered by subclause (i)" within the meaning of subclause (ii), so that their employer may provide compensatory time pursuant to individual agreements under the second subclause.

## I

Congress enacted the FLSA in 1938 to establish nationwide minimum wage and maximum hours standards. Section 7 of the Act encourages compliance with maximum hours standards by providing that employees generally must be paid on a time-and-one-half basis for all hours worked in excess of 40 per week.[3]

Amendments to the Act in 1966[4] and 1974[5] extended its coverage to most public employers, and gave rise to a series of cases questioning the power of Congress to regulate the

---

[3] 29 U. S. C. § 207(a).

[4] Fair Labor Standards Amendments of 1966, §§ 102(a) and (b), 80 Stat. 830, 29 U. S. C. §§ 203(d) and (r).

[5] Fair Labor Standards Amendments of 1974, §§ 6(a)(1) and (6), 88 Stat. 58, 60, 29 U. S. C. §§ 203(d) and (x).

compensation of state and local employees.[6]  Following our decision in *Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U. S. 528 (1985), upholding that power, the Department of Labor (DOL) announced that it would hold public employers to the standards of the Act effective April 15, 1985.[7]

In response to the *Garcia* decision and the DOL announcement, both Houses of Congress held hearings and considered legislation designed to ameliorate the burdens associated with necessary changes in public employment practices. The projected "financial costs of coming into compliance with the FLSA—particularly the overtime provisions"—were specifically identified as a matter of grave concern to many States and localities.  S. Rep. No. 99–159, p. 8 (1985).  The statutory provision at issue in this case is the product of those deliberations.

In its Report recommending enactment of the 1985 Amendments, the Senate Committee on Labor and Human Resources explained that the new subsection 7(o) would allow public employers to compensate for overtime hours with compensatory time off, or "comp time," in lieu of overtime pay, so long as certain conditions were met: The provision of comp time must be at the premium rate of not less than $1\frac{1}{2}$ hours per hour of overtime work, and must be pursuant to an agreement reached prior to performance of the work.  *Id.*, at 10–11.  With respect to the nature of the necessary agreement, the issue raised in this case, the Committee stated: "Where employees have a recognized representative, the agreement or understanding must be between that representative and the employer, either through collective

---

[6] *Maryland* v. *Wirtz*, 392 U. S. 183 (1968); *Fry* v. *United States*, 421 U. S. 542 (1975); *National League of Cities* v. *Usery*, 426 U. S. 833 (1976); *Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U. S. 528 (1985).

[7] See S. Rep. No. 99–159, p. 7 (1985).  The Department of Labor also announced that it would delay enforcement activities until October 15, 1985; that date was later extended to November 1, 1985.  *Ibid.*

bargaining or through a memorandum of understanding or other type of agreement." *Id.*, at 10.

The House Committee on Education and Labor was in substantial agreement with the Senate Committee as to the conditions under which comp time could be made available. See H. R. Rep. No. 99–331, p. 20 (1985). On the question of subsection 7(o)'s agreement requirement, the House Committee expressed an understanding similar to the Senate Committee's: "Where employees have selected a representative, which need not be a formal or recognized collective bargaining agent as long as it is a representative designated by the employees, the agreement or understanding must be between the representative and the employer . . . ." *Ibid.*

Where the Senate and House Committee Reports differ is in their description of the "representative" who, once designated, would require that compensatory time be provided only pursuant to an agreement between that representative and the employer. While the Senate Report refers to a "recognized" representative, the House Report states that the representative "need not be a formal or recognized collective bargaining agent." *Supra* this page. The Conference Report does not comment on this difference, see H. R. Conf. Rep. No. 99–357 (1985), and the 1985 Amendments as finally enacted do not adopt the precise language of either Committee Report.

The issue is addressed, however, by the Secretary of Labor, in implementing regulations promulgated pursuant to express legislative direction under the 1985 Amendments.[8] The relevant DOL regulation seems to be patterned after the House Report, providing that "the representative need not be a formal or recognized bargaining agent."[9] At the

---

[8] 99 Stat. 790, § 6, 29 U. S. C. § 203.

[9] "(b) *Agreement or understanding between the public agency and a representative of the employees.* (1) Where employees have a representative, the agreement or understanding concerning the use of compensatory time must be between the representative and the public agency either

same time, in response to concerns expressed by the State of Missouri about the impact of the regulation in States where employee representatives have no authority to enter into enforceable agreements, the Secretary explained:

"The Department believes that the proposed rule accurately reflects the statutory requirement that a CBA [collective bargaining agreement], memorandum of understanding or other agreement be reached between the public agency and the representative of the employees where the employees have designated a representative. Where the employees do not have a representative, the agreement must be between the employer and the individual employees. The Department recognizes that there is a wide variety of State law that may be pertinent in this area. *It is the Department's intention that the question of whether employees have a representative for purposes of FLSA section 7(o) shall be determined in accordance with State or local law and practices.*" 52 Fed. Reg. 2014–2015 (1987) (emphasis added).

## II

Petitioner Moreau is the president of the Harris County Deputy Sheriffs Union, representing approximately 400 deputy sheriffs in this action against the county and its sheriff, respondent Klevenhagen. For several years, the union has represented Harris County deputy sheriffs in various matters, such as processing grievances and handling workers' compensation claims, but it is prohibited by Texas law from

through a collective bargaining agreement or through a memorandum of understanding or other type of oral or written agreement. In the absence of a collective bargaining agreement applicable to the employees, the representative need not be a formal or recognized bargaining agent as long as the representative is designated by the employees. Any agreement must be consistent with the provisions of section 7(o) of the Act." 29 CFR § 553.23(b) (1992).

entering into a collective-bargaining agreement with the county.[10]  Accordingly, the terms and conditions of petitioners' employment are included in individual form agreements signed by each employee.  These agreements incorporate by reference the county's regulations providing that deputies shall receive 1½ hours of compensatory time for each hour of overtime work.[11]

Petitioners filed this action in 1986, alleging, *inter alia*,[12] that the county violated the Act by paying for overtime work with comp time, rather than overtime pay, absent an agreement with their representative authorizing the substitution. Petitioners contended that they were "covered" by subclause (i) of subsection 7(o)(2)(A) by virtue of their union represen-

---

[10] As the Court of Appeals stated: "TEX. REV. CIV. STAT. ANN. art. 5154c prohibits any political subdivision from entering into a collective bargaining agreement with a labor organization unless the political subdivision has adopted the Fire and Police Employee Relations Act.  Harris County has not adopted that Act; thus, under article 5154c the County has no authority to bargain with the Union."  956 F. 2d 516, 519 (CA5 1992). The court went on to clarify that "Texas law prohibits any bilateral agreement between a city and a bargaining agent, whether the agreement is labeled a collective bargaining agreement or something else.  Under Texas law, the County could not enter into *any* agreement with the Union."  *Id.*, at 520 (emphasis in original).

The District Court interpreted Texas law the same way.  *Merritt* v. *Klevenhagen*, Civ. Action No. 88–1298 (SD Tex., Sept. 5, 1990), pp. 3–4, reprinted in App. to Pet. for Cert. 18a.  Our decision is premised on the normal assumption that the Court of Appeals and the District Court have correctly construed the relevant rules of Texas law.  See *Bishop* v. *Wood*, 426 U. S. 341, 346, and n. 10 (1976) (citing cases).

[11] *Merritt*, Civ. Action No. 88–1298, p. 2, reprinted in App. to Pet. for Cert. 17a.

[12] The District Court granted summary judgment for the county on two additional claims: that the county failed to include longevity pay in its overtime pay calculations, and that the county excluded nonmandated firearms qualification time from the calculation of number of hours worked. The Court of Appeals affirmed with respect to the former and remanded for further proceedings with respect to the latter claim.  956 F. 2d, at 520–523.  Neither claim is before us today.

tation, and that the county therefore was precluded from providing comp time pursuant to individual agreements (or pre-existing practice)[13] under subclause (ii).

The District Court disagreed and entered summary judgment for the county. The court assumed that designation of a union representative normally would establish that employees are "covered" by subclause (i), and hence render subclause (ii) inapplicable, but went on to hold that subclause (i) cannot apply in States, like Texas, that prohibit collective bargaining in the public sector. *Merritt* v. *Klevenhagen,* Civ. Action No. 88–1298 (SD Tex., Sept. 5, 1990), p. 5, reprinted in App. to Pet. for Cert. 19a–20a. Reaching the same result by an alternative route, the court also reasoned that petitioners were not "covered" by subclause (i) because their union was not " 'recognized' " by the county, a requirement it grounded in the legislative history of the 1985 Amendments. *Id.,* at 6, reprinted in App. to Pet. for Cert. 21a.

The Court of Appeals affirmed, but relied on slightly different reasoning. It seemed to agree with an Eleventh Circuit case, *Dillard* v. *Harris,* 885 F. 2d 1549 (1989), cert. denied, 498 U. S. 878 (1990), that the words "not covered" in subclause (ii) refer to the absence of an *agreement* rather than the absence of a representative. 956 F. 2d 516, 519–520 (CA5 1992). Under that theory, the fact that Texas law prohibits agreements between petitioners' union and the employer means that petitioners can never be "covered" by sub-

---

[13] Respondents in this case sought to provide comp time pursuant to both a "regular practice in effect on April 15, 1986," for deputies hired before that date, and individual agreements, for deputies hired later. *Merritt,* Civ. Action No. 88–1298, p. 2, reprinted in App. to Pet. for Cert. 17a. Like subclause (ii) individual agreements, "regular practice" is available as an option only for employees "not covered by subclause (i)." 29 U. S. C. § 207(o)(2); n. 2, *supra.* Accordingly, our analysis is the same with respect to both forms of agreement, and we refer to them here collectively as individual agreements.

clause (i), making subclause (ii) available as an alternative vehicle for provision of comp time.

Because there is conflict among the Circuits over the scope of subclause (i)'s coverage,[14] we granted certiorari. 506 U. S. 813 (1992).

### III

Respondents find the language of the statute perfectly clear. In their view, subclause (ii) plainly authorizes individual agreements whenever public employees have not successfully negotiated a collective-bargaining agreement under subclause (i). Petitioners, on the other hand, contend that ambiguity in the statute itself justifies resort to its legislative history and the DOL regulations, and that these secondary sources unequivocally preclude individual comp time agreements with employees who have designated a representative. We begin our analysis with the relevant statutory text.

At least one proposition is not in dispute. Subclause (ii) authorizes individual comp time agreements only "in the case of employees not covered by subclause (i)." Our task, therefore, is to identify the class of "employees" covered by subclause (i). This task is complicated by the fact that sub-

---

[14] See, *e. g., International Assn. of Fire Fighters, Local 2203* v. *West Adams County Fire Dist.,* 877 F. 2d 814 (CA10 1989) (employees covered by subclause (i) upon designation of representative); *Abbott* v. *Virginia Beach,* 879 F. 2d 132 (CA4 1989) (employees covered by subclause (i) upon designation of recognized representative), cert. denied, 493 U. S. 1051 (1990); *Dillard* v. *Harris,* 885 F. 2d 1549 (CA11 1989) (employees covered by subclause (i) upon entry of agreement regarding compensatory time), cert. denied, 498 U. S. 878 (1990); *Nevada Highway Patrol Assn.* v. *Nevada,* 899 F. 2d 1549 (CA9 1990) (employees covered by subclause (i) upon designation of representative unless state law prohibits public sector collective bargaining).

For discussion of the division in the Courts of Appeals, see generally Note, The Public Sector Compensatory Time Exception to the Fair Labor Standards Act: Trying to Compensate for Congress's Lack of Clarity, 75 Minn. L. Rev. 1807 (1991).

clause (i) does not purport to define a category of employees, as the reference in subclause (ii) suggests it would. Instead, it describes only a category of agreements—those that (a) are bargained with an employee representative, and (b) authorize the use of comp time.

Respondents read this shift in subject from "employees" in subclause (ii) to "agreement" in subclause (i) as susceptible of just one meaning: Employees are covered by subclause (i) only if they are bound by applicable provisions of a collective-bargaining agreement. Under this narrow construction, subclause (i) would not cover employees who designate a representative if that representative is unable to reach agreement with the employer, for whatever reason; such employees would remain "uncovered" and available for individual comp time agreements under subclause (ii).

We find this reading unsatisfactory. First, while the language of subclauses (i) and (ii) will bear the interpretation advanced by respondents, we cannot say that it will bear no other. Purely as a matter of grammar, subclause (ii)'s reference to "employees" remains unmodified by subclause (i)'s focus on "agreement," and "employees . . . covered" might as easily comprehend employees with representatives as employees with agreements. See *International Assn. of Fire Fighters, Local 2203* v. *West Adams County Fire Dist.*, 877 F. 2d 814, 816–817, and n. 1 (CA10 1989).

Second, respondents' reading is difficult to reconcile with the general structure of subsection 7(o). Assuming designation of an employee representative, respondents' theory leaves it to the employer to choose whether it will proceed under subclause (i), and negotiate the terms of a collective comp time agreement with the representative, or instead proceed under subclause (ii), and deal directly with its employees on an individual basis. If the employer is free to choose the latter course (as most employers likely would), then it need only decline to negotiate with the employee representative to render subclause (i) inapplicable and authorize

individual comp time agreements under subclause (ii).[15] This permissive interpretation of subsection 7(o), however, is at odds with the limiting phrase of subclause (ii) at issue here. See *supra*, at 31. Had Congress intended such an open-ended authorization of the use of comp time, it surely would have said so more simply, forgoing the elaborate subclause structure that purports to restrict use of individual agreements to a limited class of employees. Respondents' broad interpretation of the subsection 7(o) exception is also in some tension with the well-established rule that "exemptions from the [FLSA] are to be narrowly construed." See, *e. g., Mitchell v. Kentucky Finance Co.,* 359 U. S. 290, 295–296 (1959).

At the same time, however, we find equally implausible a reading of the statutory text that would deem employees "covered" by subclause (i) whenever they select a representative, whether or not the representative has the ability to enter into the kind of agreement described in that subclause. If there is no possibility of reaching an agreement under subclause (i), then that subclause cannot logically be read as applicable. In other words, "employees . . . covered by subclause (i)" must, at a minimum, be employees who conceivably could receive comp time pursuant to the agreement contemplated by that subclause.

The most plausible reading of the phrase "employees . . . covered by subclause (i)" is, in our view, neither of the extreme alternatives described above. Rather, the phrase is

---

[15] Indeed, even an employer who is party to a collective-bargaining agreement with its employees may be permitted to take advantage of subclause (ii) under respondents' construction. Because subclause (i) describes only those agreements that authorize the use of comp time, see *supra*, at 31–32, a collective-bargaining agreement silent on the subject, or even one prohibiting use of comp time altogether, would not constitute a subclause (i) agreement. Accordingly, employees bound by such an agreement would not be "covered by subclause (i)" under respondents' theory, and their employer would be free to provide comp time instead of overtime pay pursuant to individual employee agreements.

most sensibly read as referring to employees who have designated a representative with the authority to negotiate and agree with their employer on "applicable provisions of a collective bargaining agreement" authorizing the use of comp time. This reading accords significance to both the focus on the word "agreement" in subclause (i) and the focus on "employees" in subclause (ii). It is also true to the hierarchy embodied in subsection 7(o), which favors subclause (i) agreements over individual agreements by limiting use of the latter to cases in which the former are unavailable.[16]

This intermediate reading of the statutory text is consistent also with the DOL regulations, interpreted most reasonably. It is true that 29 CFR § 553.23(b), read in isolation, would support petitioners' view that selection of a representative by employees—even a representative without lawful authority to bargain with the employer—is sufficient to bring the employees within the scope of subclause (i) and preclude use of subclause (ii) individual agreements. See *supra*, at 27, and n. 9. So interpreted, however, the regulation would prohibit entirely the use of comp time in a substantial portion of the public sector. It would also be inconsistent with the Secretary's statement that "the question . . . whether employees have a representative for purposes of FLSA section 7(o) shall be determined in accordance with State or local law and practices." See *supra*, at 28. This

---

[16]So read, we do not understand subsection 7(o) to impose any new burden upon a public employer to bargain collectively with its employees. Subsection 7(o) is, after all, an exception to the general FLSA rule mandating overtime pay for overtime work, and employers may take advantage of the benefits it offers "only" pursuant to certain conditions set forth by Congress. 29 U. S. C. § 207(o)(2); see n. 2, *supra*. Once its employees designate a representative authorized to engage in collective bargaining, an employer is entitled to take advantage of those benefits if it reaches a comp time agreement with the representative. It is also free, of course, to forgo collective bargaining altogether; if it so chooses, it remains in precisely the same position as any other employer subject to the overtime pay provisions of the FLSA.

clarification by the Secretary convinces us that when the regulations identify selection of a representative as the condition necessary for coverage under subclause (i), they refer only to those representatives with lawful authority to negotiate agreements.[17]

Thus, under both the statute and the DOL regulations, employees are "covered" by subclause (i) when they designate a representative who lawfully may bargain collectively on their behalf—under the statute, because such authority is necessary to reach the kind of "agreement" described in subclause (i), and under the regulation, because such authority is a condition of "representative" status for subclause (i) purposes. Because we construe the statute and regulation in harmony, we need not comment further on petitioners' argument that the Secretary's interpretation of the 1985 Amendments is entitled to special deference.

Petitioners in this case did not have a representative authorized by law to enter into an agreement with their employer providing for use of comp time under subclause (i). Accordingly, they were "not covered by subclause (i)," and subclause (ii) authorized the individual agreements challenged in this litigation.

The judgment of the Court of Appeals is affirmed.

*So ordered.*

---

[17] Accordingly, public employers need not fear that they will find themselves dealing with a different representative for each employee, should each of their employees choose to select his or her own representative. See Brief for the National Association of Counties et al. as *Amici Curiae* 17. Unless such individual designations were "in accordance with State or local law and practices," the designees would not be "representatives" for purposes of subclause (i).