16 A.3d 453 (2011)
419 N.J. Super. 160
NUTLEY POLICEMEN'S BENEVOLENT ASSOCIATION LOCAL #33, and Michael O'Halloran, individually and on behalf of other similarly situated individual Nutley Police Officers, Plaintiffs-Appellants,
v.
TOWNSHIP OF NUTLEY, Nutley Police Department, Commissioner Alphonse Petracco and John Holland, Chief of Police, Defendants-Respondents.
No. A-3730-09T2.
Superior Court of New Jersey, Appellate Division.
Argued November 8, 2010.
Decided April 1, 2011.
*454 David J. DeFillippo, Red Bank, argued the cause for appellants (Klatsky Sciarrabone & DeFillippo, attorneys; Mr. DeFillippo, of counsel and on the brief).
John A. Boppert, Springfield, argued the cause for respondents (Ruderman & Glickman, P.C., attorneys; Mr. Boppert, of counsel and on the brief).
Before Judges RODRÍGUEZ, GRALL and LeWINN.
The opinion of the court was delivered by
GRALL, J.A.D.
The Fair Labor Standards Act (FLSA), 29 U.S.C.S. §§ 201-219, requires a public employer to allow an employee awarded compensatory time off in lieu of overtime pay "to use such time within a reasonable period after making [a] request if the use of the compensatory time does not unduly disrupt the operations of the public agency." 29 U.S.C.S. § 207(o)(5). This appeal requires us to consider whether an employer who denies permission to use compensatory time on the date requested but permits use within the "reasonable period" defined in its agreement with its employees must also show that a grant would "unduly disrupt" operations. 29 C.F.R. § 553.25(c)(2), (d). We conclude that the employer need not do so and affirm the order granting summary judgment to the employer.
Plaintiffs Nutley PBA Local # 33 and its president Michael O'Halloran, on behalf of himself and others similarly situated, commenced this action against defendants Township of Nutley, its police department *455 and the Department's commissioner and chief.[1] Plaintiffs sought a declaration that the Department's policy for granting use of compensatory time violates the FLSA. They also sought restraints against the policy and liquidated damages available under 29 U.S.C.S. § 216(b) for O'Halloran and other aggrieved officers.
The material facts are not in dispute. The Nutley PBA Local # 33 is the collective bargaining unit for the patrol officers and sergeants employed by the Department. The Department has a policy that allows an officer entitled to overtime pay to elect compensatory time in lieu of the overtime pay when the officer reports the overtime hours. The policy prohibits an officer from carrying more than 150 hours of compensatory time but otherwise leaves to the officer the choice between overtime pay and compensatory time.
Most pertinent here, the policy sets the conditions under which an officer may use compensatory time. Although the conditions are not expressly stated in the parties' collective bargaining agreement (CBA) and memorandum of agreement (MOU),[2] plaintiffs' attorney, in the trial court, "candidly" acknowledged that the policy conforms with the parties' mutual understanding of those documents.[3]
Use of compensatory time, as well as vacation and personal days, is linked to the minimum staffing level on the officer's shift. If a grant of a request for time off will leave the shift above or at the minimum level, then the request is approved. In contrast, if approval of the request would leave staff on the shift below the minimum level during the hours that the officer requests, the request is denied.
Minimum staffing levels are addressed in the CBA and MOU. The CBA requires the Chief to give the PBA periodic notice of "the minimum manpower allocation established for uniformed patrol officers assigned to patrol cars (exclusive of fixed posts) on each shift." In the MOU, the PBA acknowledges that this section entitles them to notice, but nothing more. The current minimum staffing levels have been in effect since December 2003. There are, each shift, "a minimum of five patrol officers . . . for patrol duties, exclusive of fixed posts" and one supervisory sergeant, whose responsibilities may be assumed by a lieutenant in the event of the sergeant's absence. The CBA expressly ties approval of vacation time to minimum staffing levels, authorizing denial of a request to use a vacation day that will "cause the shift to fall below the minimum" level.
The CBA further requires the Department to honor requests for time off that it has granted. Once vacation is approved, the Department will not rescind it to address "manpower shortages that may later occur." Similarly, the Department must assume responsibility for a "shortage of manpower" that arises after it has approved use of a personal day. As the Chief explained during his deposition, the *456 Department views its prior approval of time off as a commitment to the officer. Consequently, if a shortage arises due to a combination of prior approvals of time off and unexpected absences, the Department maintains minimum staffing levels by calling in an officer not scheduled for duty and paying overtime if necessary. The Chief admitted this procedure does not unduly disrupt Department operations. There is no dispute that pursuant to this policy, compensatory time, personal leave and unscheduled vacation are denied, approved and honored in the same way.[4]
The Department staffs each shift to accommodate some approved time off. There are twelve patrol officers and three sergeants assigned to each of the three patrol shifts, and they work four days followed by two days off. Thus, on any given day there are eight patrol officers assigned to each shift, which is three patrol officers more than the minimum staffing level. Pursuant to the CBA, no more than two patrol officers may take vacation at the same time, leaving at least one spot for compensatory and personal time off on those days when two officers on the same shift take vacation.
In all, Department officers used 1,736.75 hours of compensatory time in 2007 and 2,035.25 hours in 2008. The record also includes evidence of two denials of requests for use of compensatory time. Both requests were on May 9, 2009 to use the time on the final hours of the officer's shift that day.[5]

I
"[T]he FLSA was designed . . . to ensure that each employee covered by the Act . . . would be protected from the evil of overwork. . . ." Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641, 653 (1981) (internal quotations and emphasis omitted). Generally, the FLSA requires an employer to pay a non-exempt worker who exceeds specified maximum hours at an "overtime" rate one and one-half times the worker's regular rate. 29 U.S.C.S. § 207(a). "[T]o ameliorate the burdens associated with changes in public employment practices" necessitated by the FLSA's application to public employers, Moreau v. Klevenhagen, 508 U.S. 22, 26, 113 S.Ct. 1905, 1908, 123 L.Ed.2d 584, 591 (1993), Congress has authorized such employers to award compensatory time under specified conditions at a rate of one and one-half hours for every hour of work beyond the statutory maximum. 29 U.S.C.S. § 207(o)(1)-(2). Section 207(o) also limits the number of compensatory hours that an employee may accrue that vary with the employee's work, and it specifies how cash compensation must be paid to an employee who resigns before using earned compensatory time. 29 U.S.C.S. § 207(o)(3)-(4).
Pursuant to Section 207(o), a public employer whose employees have a representative may not award compensatory time in lieu of overtime pay unless it is authorized by "a collective bargaining agreement, memorandum of understanding, or any other agreement between the public agency and representatives of such employees." 29 U.S.C.S. § 207(o)(2)(A)(i).
The Secretary of Labor, who is charged with enforcement and administration of the FLSA, has adopted regulations that elaborate on the agreements required by statute. Pursuant to 29 C.F.R. *457 § 553.23, the agreement may be "oral or written," and it may include provisions governing the use of compensatory time that are consistent with 29 U.S.C.S. § 207(o). Where "the conditions under which an employee can take compensatory time" are contained in a qualifying agreement or understanding, the agreement's terms define the "reasonable period." 29 C.F.R. § 553.25(c)(2).
The "reasonable period" clause, as noted at the outset of this opinion, is one of two statutory clauses governing an employer's obligation to permit use of accrued compensatory time. The other is the "unduly disrupt" clause. Again, Section 207(o)(5) provides that "[a]n employee of a public agency" who has earned and "requested the use of such compensatory time, shall be permitted . . . to use such time within a reasonable period after making the request if the use of the compensatory time does not unduly disrupt the operations of the public agency." 29 U.S.C.S. § 207(o)(5)(A)-(B) (emphasis added).
The central question in this appeal requires us to consider the relationship between the clauses. That is a question of law that we consider de novo. In re Liquidation of Integrity Ins. Co., 193 N.J. 86, 94, 935 A.2d 1184 (2007). We strive to interpret and apply laws as the legislature intended. Higgins v. Pascack Valley Hosp., 158 N.J. 404, 418, 730 A.2d 327 (1999). The inquiry begins with the language of the statute, and we follow it when its meaning is clear. Ibid.; see Carcieri v. Salazar, 555 U.S. 379, 129 S.Ct. 1058, 1063-64, 172 L.Ed.2d 791, 799 (2009); Chevron, U.S.A., Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694, 702-03 (1984). Where, as here, the law is federal, decisions of other courts and the interpretations of a federal agency charged with the enforcement and administration of the law are also considered and given due deference. See Glukowsky v. Equity One, Inc., 180 N.J. 49, 64, 848 A.2d 747 (2004), cert. denied, 543 U.S. 1049, 125 S.Ct. 864, 160 L.Ed.2d 770 (2005). When the statutory language is not clear or is silent, courts give "considerable weight" to regulations that provide "a permissible construction of the statute." Chevron, supra, 467 U.S. at 843-44, 104 S.Ct. at 2782, 81 L.Ed.2d at 703-04; accord Estate of F.K. v. Div. of Med. Assistance and Health Servs., 374 N.J.Super. 126, 138, 863 A.2d 1065 (App.Div.), certif. denied, 184 N.J. 209, 876 A.2d 283 (2005). Lesser deference is given to informal agency interpretations such as letter opinions of the Secretary. We only give the deference due in light of the "`thoroughness evident in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade.'" Big M, Inc. v. Tx. Roadhouse Holding, LLC, 415 N.J.Super. 130, 136 (App.Div.2010) (quoting Estate of F.K., supra, 374 N.J.Super. at 141-42, 863 A.2d 1065); accord Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 1662-63, 146 L.Ed.2d 621, 631 (2000).
Federal courts have deferred to the Secretary's regulations elaborating on the meaning of the terms "reasonable period" and "unduly disrupt." We agree that the terms are sufficiently open-ended to leave room for interpretation. Heitmann v. City of Chicago, 560 F.3d 642, 645-47 (7th Cir.2009) (looking to the Secretary's regulation defining "unduly disrupt"); Mortensen v. County of Sacramento, 368 F.3d 1082, 1090 (9th Cir.2004) (looking to the Secretary's regulation defining "reasonable period"). See generally Estate of F.K., supra, 374 N.J.Super. at 138, 863 A.2d 1065.
*458 In contrast, the relationship between the "reasonable period" clause and the "unduly disrupt" clause is plainly stated. The clauses have independent significance, and the "reasonable period" analysis precedes the "unduly disrupt" analysis.
The Federal Courts of Appeals for the Ninth and Fifth Circuits have given the most persuasive explanation of the relationship. Mortensen, supra, 368 F.3d at 1089; Houston Police Officers' Union v. City of Houston, 330 F.3d 298, 303 (5th Cir.), cert. denied, 540 U.S. 879, 124 S.Ct. 300, 157 L.Ed.2d 143 (2003); accord Scott v. City of New York, 340 F.Supp.2d 371, 378-80 (S.D.N.Y.2004). Those courts have concluded that the "reasonable period" clause refers to the time within which the employer must ordinarily grant a request to use compensatory time and the "unduly disrupt" clause refers to conditions that relieve the employer of that obligation.[6] They therefore held that an employee does not have a right to determine when he uses compensatory time off; the only statutory restriction on an employer is that it must grant the use of leave within a reasonable period of an employee's request. Mortensen, supra, 368 F.3d at 1087-90; Houston Police Officer's Union, supra, 330 F.3d at 303-04.
We do not find any ambiguity in the statutory language that calls that interpretation into question. Moreover, it is supported by a decision of the Court of Appeals for the Sixth Circuit in a case involving an agreement very much like the one here. Aiken v. City of Memphis, 190 F.3d 753, 755-57 (6th Cir.1999), cert. denied, 528 U.S. 1157, 120 S.Ct. 1164, 145 L.Ed.2d 1075 (2000). Relying on 29 C.F.R. § 553.25(c)(2), the court concluded that the agreement between a public employer and its employees governed the "reasonable period" and declined to consider whether denials consistent with the agreement could also be justified under the "unduly disrupt" standard. Ibid. On that point, the court relied on a passage in the preamble to the regulations stating that when an employer and its employees choose to include "the conditions or terms regarding the taking of compensatory time off" in their agreements, "[n]o useful purpose would be served, in the Department's view, by providing for some further review under the FLSA of the appropriateness of the agreed upon terms." Id. at 757 (quoting 52 Fed.Reg. 2,012 (Jan. 16, 1987)).
Plaintiffs rely on Heitmann, a decision of the Court of Appeals for the Seventh Circuit that rejects the foregoing interpretation of the relationship between "reasonable period" and "unduly disrupt." The court rejected the interpretation because it reasoned that it was "implausible" that Congress intended to permit an employer to justify delay of an employee's wish to use compensatory time for longer than a "reasonable period" because of "undue disruption." 560 F.3d at 647. Consequently, the court concluded that an employer confronted with a request for leave on a specific date "decides whether time off [on that date] would cause undue disruption, and if it would the employer has a reasonable time to grant leave on some other date." Id. at 646-47. We note that Heitmann's statement of the relationship between the clauses has limited value because it was not essential to the decision. Ibid.
We reject Heitmann's interpretation primarily because it is inconsistent with the statutory language. Moreover, it is *459 difficult to conclude the plain meaning is implausible because the Senate Report accompanying Section 207(o)(5) provides a plausible illustrationa snow-plow operator's request to use compensatory time in February made months ahead of time. S.Rep. No. 99-159 (1985), 1985 U.S.C.C.A.N. 651. If the snow-plow operator makes a request in November for time off in February and is given approval to take time in May, the employer has not granted the request within a "reasonable period" of its making. Nonetheless, it could justify the denial as required to avoid undue disruption of its operations during a peak period.
Plaintiffs rely on other cases that arguably can be read to suggest that every denial of a request to use compensatory time on a specific date must be measured against the "unduly disrupt" standard. But each of those cases was decided under the "unduly disrupt" standard, and, unlike this case, none involved an agreement between the employer and the employees' representative that qualified as governing the meaning of "reasonable period" pursuant to 29 C.F.R. § 553.25(c)(2). Heitmann, supra, 560 F.3d at 646; Beck v. City of Cleveland, 390 F.3d 912, 923 (6th Cir.2004), cert. denied, 545 U.S. 1128, 125 S.Ct. 2930, 162 L.Ed.2d 867 (2005); DeBraska v. City of Milwaukee, 131 F.Supp.2d 1032, 1035-37 (E.D.Wis.2000). Accordingly, we do not find those decisions helpful in analyzing this case.
We recognize that Beck and DeBraska rely on an informal opinion of the Secretary that supports application of the "unduly disrupt" clause in every case, regardless of a qualifying agreement, but in our view that opinion, which is published without any of the relevant facts,[7] is not entitled to deference because it is conclusory, inconsistent with 29 C.F.R. § 553.25(c)(1)-(2) and fails to give any effect to the statute's "reasonable period" clause. Big M, supra, 415 N.J.Super. at 136. Moreover, the Secretary's informal opinion conflicts with the passage in the preamble to the regulations that favors employee-employer agreements on the policies governing compensatory time off. That is the only formal statement addressing the relationship between the clauses that the Secretary has issued.
In our view, the regulations also do not address the relationship between the clauses. Plaintiffs argue that paragraph (d) applies to every denial of a request to use compensatory time on a specific date, even one that is made in conformity with conditions specified in an agreement that "govern[s] the meaning of `reasonable period.'" 29 C.F.R. § 553.25(c)(2).
Read in isolation, 29 C.F.R. § 553.25(d) provides some support for plaintiffs' position:
Unduly disrupt. When an employer receives a request for compensatory time off, it shall be honored unless to do so would be "unduly disruptive" to the agency's operations. Mere inconvenience to the employer is an insufficient basis for denial of a request for compensatory time off. (See H. Rep. 99-331, p. 23.) For an agency to turn down a request from an employee for compensatory time off requires that it should reasonably and in good faith anticipate that it would impose an unreasonable burden on the agency's ability to provide services of acceptable quality and quantity for the public during the time *460 requested without the use of the employee's services.
[(Emphasis added).]
It is more probable, however, that this definition was intended to apply, as the statute indicates, only when permission to use leave is not granted within a "reasonable period" as defined in paragraph (c) of the regulations.
There is another reason that we prefer the interpretation of Section 207(o)(5) that comports with its plain meaning. It gives effect to both clauses, which is an important guide for proper judicial interpretation of statutes. Pa. Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 562, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588, 598 (1990).
The clause limiting the employer's obligation to a grant of permission "within a reasonable period after making the request" has no readily discernible impact in most cases if the employer must justify every denial with reference to undue disruption. Generally, reasonableness is understood to be a function of the balance of all relevant factors under the totality of the circumstances. See Black's Law Dictionary 1138 (5th ed. 1979); Hosp. Ctr. at Orange v. Guhl, 331 N.J.Super. 322, 333-36, 751 A.2d 1077 (App.Div.2000). Here too, the "reasonable period" clause, as explained in the Secretary's regulation, allows public employers and employees to take account of a wide range of circumstances relevant to their work force and work when deciding whether and when compensatory time should be given, accepted and used in lieu of overtime pay. 29 C.F.R. § 553.23(c)(1) (listing several factors that will be considered if there is no agreement about when compensatory time may be used).
In contrast to the variety of factors relevant to the reasonableness of the period, the "unduly disrupt" clause's safety valve is quite narrow. The focus there is not on the totality of the circumstances but solely on "the agency's ability to provide services." 29 C.F.R. § 553.25(d). If the narrow "unduly disrupt" standard applies in every case, then the broader and more flexible "reasonable period" standard has no impact except when necessary to select a date different than the one denied as unduly disruptive.[8]
Flexibility for the public employer is important to proper application of the FLSA. As the Supreme Court has recognized, Congress authorized public employers to award compensatory time instead of overtime pay in order to give public employers flexibility in meeting their obligations under the FLSA. Moreau, supra, 508 U.S. at 26, 113 S.Ct. at 1908, 123 L.Ed.2d at 591. The plain meaning that gives significance to the "reasonable period" in every case serves that purpose.
An interpretation that gives effect to the "reasonable period" clause in every case has benefits for the employee as well as the employer. Interpreted as the Secretary has to permit agreements between employers and employees that "govern the meaning of `reasonable period,'" the clause promotes fairness as well as the purposes of the FLSA. 29 C.F.R. § 553.25(c)(2); see Dinges v. Sacred Heart St. Mary's Hosps., 164 F.3d 1056, 1059 (7th Cir.1999) (recognizing that the FLSA overrides contracts that do not comply with it but noting that *461 "in close cases it makes sense to let private arrangements endurefor the less flexible statutory approach has the potential to make everyone worse off"). The Secretary's deference to employer-employee agreements is entirely consistent with 29 U.S.C.S. § 207(o)(7), which permits award of compensatory time in lieu of overtime pay only when there is such an agreement.
The policy here illustrates how agreements that govern the use of compensatory time can promote fairness and the purposes of the FLSA. These plaintiffs are never compelled to accept compensatory time in lieu of overtime, because the parties' agreement gives the officers, not the Department, the right to elect compensatory time in lieu of overtime pay. Indeed, the parties' rule is quite simpleif a patrol officer wants to use time on a specific date or hour, the request must be made before three of the eight officers on the shift have obtained approval to take that time off; if that day is unavailable, the officer can ask for the next available day or the next day the officer wants to have off. Without this agreement, the officer could expect to be given the next available day whether or not the officer wanted to work that day. Moreover, the policy gives notice of the circumstances in which the officer will be able to use the leave and that permits an informed decision when the officer opts for compensatory time rather than overtime pay.
The agreement does not do what the regulation prohibits"coerce[ ] [an officer] to accept more compensatory time than [the Department] can reasonably and in good faith expect to be able to grant within a reasonable period of his or her making a request for use of such time." 29 C.F.R. § 553.25(b). The election to take compensatory time in lieu of overtime pay is made by the individual officers, and the Department has no input in that decision and no opportunity to coerce. Plaintiffs do not argue that this agreed-upon arrangement requires an officer to go without use of compensatory time for too long; they complain because they cannot always use the time when they want.[9] Any harshness perceived by an individual officer can be avoided, however, because this agreement gives the officer the right to demand overtime pay instead of compensatory time that the officer cannot always use on the exact date demanded.
Plaintiffs argue that the Department violates the Secretary's regulation by using compensatory time to "avoid statutory overtime compensation." 29 C.F.R. § 553.25(b). We disagree. First, because an officer can demand overtime pay whenever the employee works overtime hours, only the employee has the power to allow the Department to avoid payment of overtime. Second, the parties' understanding requires the Department to pay a substitute officer overtime when it is necessary to honor pre-approved time off, including compensatory time off. Thus, the minimum staffing level is the sole determinant of approved use of compensatory time. Avoidance of paying overtime to a substitute may be an incidental benefit for the Department in some cases, but it is not controlling.
This agreement is, as noted above, very much like the one approved in Aiken, 190 F.3d at 755-57. After considering plaintiffs' arguments and all of the relevant authorities, we see no reason to reach a different result here.
*462 The FLSA is designed to protect against employers who overwork their employees rather than hiring enough workers. To that end, the FLSA provides a deterrentthe worker must be compensated in cash or time at a rate of ninety minutes for every sixty minutes worked beyond the maximum allowed in a given week. The purpose of the FLSA is not, however, to give employees the right to take off when they choose. If employees were to bargain for that right, the Department could budget for the unpredictable overtime costs that approval of compensatory time on demand would entail or decide that it is more affordable and efficient to pay overtime and eliminate the option of compensatory time. But the FLSA does not compel the costly and unpredictable result that comes from use of compensatory time on demand.
For all of the forgoing reasons, we conclude that the Department is entitled to summary judgment and affirm. We summarize our determinations to ensure clarity. The parties' CBA and MOU as they understand them do not violate 29 U.S.C.S. § 207(o). Pursuant to 29 C.F.R. § 553.25(c)(2), the policy that is the product of their understanding governs the "reasonable period" for use of compensatory time, and compensatory time is granted within that "reasonable period." Accordingly, the Department need not justify a denial in accordance with the parties' agreement on the ground that it would "unduly disrupt operations," which is a standard that applies when permission to use compensatory time is not granted within a "reasonable period" of the request.

II
There are several preliminary questions about the propriety of this action that the parties have not raised and we need not address. We considered the validity of the Department's policy and the parties' agreement because O'Halloran's individual claim is based solely on the allegation that the policy violates the FLSA. Our determinations that the policy does not violate the FLSA and no officer is entitled to damages on the ground that it does make it unnecessary to address three issues:
1) Whether the claims of unnamed plaintiffs were properly before the court. See 29 U.S.C.S. § 216(b) (providing that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought").
2) Whether injunctive relief in the form of a restraint against the policy would have been available in this action if there were a violation of the FLSA. See 29 U.S.C.S. § 216(b) (authorizing liquidated damages and providing for equitable relief limited to claims based on retaliation prohibited by 29 U.S.C.S. § 215(a)(3)); 29 U.S.C.S. § 217 (authorizing the Secretary to commence an action to restrain a violation in federal district court); see Heitmann, supra, 560 F.3d at 644, 647 (discussing the limitation on restraints, vacating injunctive relief and remanding for award of appropriate non-injunctive relief to the individual plaintiffs).
3) Whether the union may sue on behalf of members aggrieved by a violation of 29 U.S.C.S. § 207(o). See UFCW, Local 1564 v. Albertson's, Inc., 207 F.3d 1193, 1202 & n. 6 (10th Cir.2000) (discussing the bar against representative actions without deciding whether it applies to actions commenced by a union to obtain relief for its members for a violation of 29 U.S.C.S. § 207(o)).
Affirmed.
NOTES
[1] At the outset of the litigation, the parties agreed that the claims did not fall within the jurisdiction of the Public Employee Relations Commission. There are other questions about the propriety of this action that the parties have not addressed, which we note in part II of this decision.
[2] The MOU was executed in 1991 in connection with a grievance submitted to the Public Employee Relations Commission.
[3] The policy and the CBA differ in several respects. For example, the CBA limits the right to elect compensatory time in lieu of overtime pay to hours the officer spent appearing in court, but the policy permits the officer to make that election without regard to the work done. As noted above, the CBA does not address approval of the use of compensatory time, but it does address approval of personal and vacation days.
[4] The CBA provides a system for scheduling vacation but also permits officers to reserve days for use outside that system.
[5] One of the officers filed a certification with the trial court, but it does not address his May 9, 2009 request.
[6] In July 2008, the Department of Labor proposed modifying § 553.25 to adopt the view espoused by the Fifth and Ninth Circuits. 73 Fed.Reg. 43,654, 43,660-62 (July 28, 2008). The proposed amendment has not been adopted.
[7] The letter ruling from the Department of Labor Wage and Hour section is available at 1994 DOLWH LEXIS 71.
[8] Plaintiffs argue that the phrase "reasonable period" refers only to the time between the date the employee makes a request and the day or hours off the employee requests. If that were true, then the phrase might have meaning not subsumed by applying the "unduly disrupt" clause in every case, but that is not what the statute says. Additionally, that interpretation is inconsistent with the regulation that elaborates on the meaning of the phrase. 29 C.F.R. § 553.25(c) (discussed above).
[9] It is conceivable that an employer could violate the FLSA by administering an agreement like the one at issue here in a manner that makes use of compensatory time illusory for example, by regularly staffing shifts at minimum level. But there is no evidence of that here.